**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

**IN RE: KEY WEST NAS LITIGATION**

**CASE NO. 4:25-cv-10037**

**_________________________________/**

**District Judge David S. Leibowitz**
**Magistrate Judge Edwin G. Torres**

**JURY TRIAL DEMANDED**

**This document is to be filed ONLY in:**
*Bush Family*, No. 4:26-cv-10079

**SHORT-FORM COMPLAINT**

---

The Plaintiff(s) named below, or Plaintiff's representative (hereinafter "Plaintiff" or "Plaintiffs"), files this Short-Form Complaint against Defendants arising from the condition of private military housing on Naval Air Station Key West ("NAS Key West") in Key West, Florida. Plaintiff incorporates by reference the allegations contained in the Amended Master Complaint (DE 175) on file in In Re: Key West NAS Litigation, Case No. 4:25-cv-10037.

## I. JURISDICTIONAL STATEMENT

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) and (d)(11) (CAFA). Defendants are citizens of Pennsylvania and Delaware. Plaintiff's state of citizenship is set forth below.

## II. PLAINTIFFS INFORMATION

**Plaintiff 1:**

| **1a. Name:**<br>Wayne C Bush | |
|---|---|
| **2a. Sex:**<br>☑ Male<br>☐ Female | **3a. Year of Birth:**<br>1980 |
| **4a. Current Address:**<br>30381 Oleander Blvd Big Pine Key, FL, 33043 | **5a. State of Domicile/ Citizenship**<br>Florida |

**Plaintiff 2:**

| **1b. Name:**<br>Lisa M Bush | |
|---|---|
| **2b. Sex:**<br>☐ Male<br>☑ Female | **3b. Year of Birth:**<br>1980 |
| **4b. Current Address:**<br>30381 Oleander Blvd Big Pine Key, FL, 33043 | **5b. State of Domicile/ Citizenship**<br>Florida |

## III. HOUSING AND EXPOSURE INFORMATION

Plaintiffs resided at the address listed below on Naval Air Station Key West. During their tenancy, Plaintiffs observed, contacted, ingested, and inhaled mold, experienced elevated interior moisture, water intrusion, and suffered from the unsafe and unhealthy conditions described in this section. Plaintiffs reported these conditions to Defendants, who failed to adequately remediate or disclose the true nature of the deficiencies.

**6. Plaintiffs' address at NAS Key West housing:**

2056 Halsey Drive Key West FL

**7. Did Plaintiffs observe dampness or excess moisture in their NAS Key West home?**

☑ Yes ☐ No

**8. Did Plaintiffs observe mold in this home?**

☑ Yes ☐ No

**9. Did Plaintiffs experience water intrusion at their home (leaks, flooding, standing water, water from outside)?**

☑ Yes ☐ No

**10. If yes, source(s):**

☐ Roof leak ☑ Plumbing leak ☑ HVAC condensation/leak ☐ Window/door leak

☐ Foundation/exterior ☐ N/A

☐ Unknown ☐ Other: ____________________

**11. Was water intrusion repaired?**

☑ Yes ☐ No ☐ Partially ☐ N/A

**12. Did Plaintiffs report mold or moisture issues to Defendants?**

☑ Yes ☐ No ☐ N/A

**13. How did Plaintiffs report mold or moisture issues to Defendants?**

☐ Online portal / work order system ☑ Phone call ☐ In person ☐ Email

☐ Text message ☐ Other: ____________________ ☐ N/A

**14. Approximately how many times did Plaintiffs submit a work order or complaint about mold, moisture, water intrusion, lead, asbestos, or pests?**

☑ 1-2 ☐ 3-5 ☐ 6-10 ☐ More than 10 ☐ Lost count ☐ N/A

**15. Did Defendants attempt to address excess moisture, or dampness in Plaintiffs' home?**

☐ Yes ☑ No ☐ N/A

**16. Did Defendants attempt to address mold in Plaintiffs' home?**

☐ Yes ☑ No ☐ N/A

**17. Identify the efforts Defendants undertook to address (fix) the mold:**

☐ Defendants sprayed mold with Kilz or a similar chemical

☐ Defendants painted over mold

☐ Defendants superficially cleaned the moldy area

☐ Defendants inspected and found mold but did not take any further action

☐ Defendants set up fans to dry wet area but did not remove and replace wet or moldy materials

☐ Defendants stopped the leak but did not dry or repair areas damaged by the leak

☐ Defendants removed visible mold but did not address the underlying moisture source

☐ Defendants replaced cosmetic materials (e.g., drywall, carpet) without professional mold remediation

☑ Defendants were informed of the mold but denied its existence or significance

☐ Other: ________________________________________

☐ N/A

**18. After Defendants' efforts to address the mold at this home, did the mold return or persist?**

☐ Yes ☐ No ☑ N/A

**19. Did Defendants use containment during all repair or remediation process(es) at this home?**

☑ Yes ☐No ☐ N/A

**20. Were Plaintiffs present or living in this home during any alleged remediation?**

☑ Yes ☐ No ☐ N/A

**21. Did Plaintiffs' NASKW home have any of these issues:**

☐ Exterior water intrusion ☐ Roof leak ☐ Plumbing leaks ☐ Interior water leaks

☑ HVAC issues ☑ HVAC leaks ☐ Elevated moisture ☑ Ceiling collapse

☐ Ceiling brace ☐ Flooring issues ☐ Open or exposed drywall ☐ No vapor barrier

☐ Wet / moist / soft walls ☐ Other: ______________________________

**22. Were Plaintiffs exposed to the following in this home:**

☐ Lead ☐ Asbestos ☑ Pests (insects, rodents, other)

**23. If Plaintiffs were exposed to lead or asbestos, did the Defendants attempt to remove, address, or fix the lead and/or asbestos?**

☐ Yes - Lead ☐ Yes – Asbestos ☐ No ☑ N/A

**24. Was containment (plastic sheets) used during lead or asbestos remediation?**

☐ Yes ☐ No ☑ N/A

**25. If Plaintiffs were exposed to pests while in this home, was the pest infestation(s) treated?**

☑ Yes ☐ No ☐ N/A

**26. Did the pests return?**

☑ Yes ☐ No ☐ N/A

**27. Did Plaintiffs live in another residence on NASKW? ☐ Yes ☑ No**

## IV. DISPLACEMENT

**28. Were Plaintiffs displaced from their NASKW home due to mold, moisture, lead, asbestos, or pest conditions?**

☐ Yes- mold ☐ Yes- moisture ☐ Yes- lead ☐ Yes- asbestos ☐ Yes- pests ☑ No

**29. After displacement, did Defendant's tell Plaintiffs everything was repaired and it was safe to return home?**

☐ Yes- everything repaired ☐ Yes- safe to return ☐ No ☑ N/A

**30. If yes, how many times were Plaintiffs displaced?**

☐ 1 time ☐ 2 times ☐ 3 times ☐ 4 times ☐ More than 4 times ☑ N/A

**31. Approximately how long was the total time Plaintiffs were displaced?**

☐ Less than 1 week ☐ 1-4 weeks ☐ 1-3 months ☐ 3-6 months ☐ More than 6 months

☐ Permanently relocated ☑ N/A

## V. CAUSES OF ACTION

**33.** Plaintiffs incorporate by reference all allegations set forth in the Master Complaint. Plaintiffs assert the following claims against Defendants.

| |
|---|
| ☑ Count I: Breach of Contract<br>Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants |
| ☑ Count II: Negligence<br>Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants |
| ☑ Count III: Gross Negligence<br>Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants |
| ☑ Count V: Negligent Infliction of Emotional Distress<br>Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants |
| ☑ Count VII: Breach of the Warranty of Habitability<br>Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants |
| ☑ Count VIII: Third-Party Beneficiary Contract<br>Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants |
| ☑ Count IX: Negligence Per Se<br>Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants |

☑ Count X: Medical Monitoring

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XI: Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) — Unfair Conduct

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XII: Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) — Deceptive Conduct

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XIII: Negligent Misrepresentation Concerning Condition of Home

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XIV: Negligent Misrepresentation Concerning Remediation of Unsafe Conditions

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XV: Fraudulent Inducement

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XVI: Fraudulent Misrepresentation

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XVII: Fraudulent Concealment of Condition of Housing

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

☑ Count XVIII: Fraudulent Concealment Leading to Decisions to Remain in Homes

Against: ☐ Balfour Beatty Communities ☐ Southeast Housing ☐ BB Military Housing Mgmt ☐ BBC Military Housing-Navy SE ☐ Balfour Beatty Investments ☑ All Defendants

## VI. FRAUD AND CONCEALMENT

Plaintiffs allege that Defendants engaged in a systematic pattern of fraud, concealment, and misrepresentation concerning the condition of the Home and the adequacy of remediation efforts, as set forth below and in the Master Complaint.

**34. Did Plaintiffs receive a 7-year maintenance history prior to move-in?**

☑ Yes ☐ No ☐ Unknown

**35. If so, was the 7-year maintenance history accurate and complete?**

☐ Yes ☐ No ☑ Unknown ☐ Did not receive a 7-year history

**36. Do Plaintiffs assert the Defendants omitted facts about the home prior to signing their lease?**

☑ Yes ☐ No

**37. Did Plaintiffs rely on Defendants' statements, documents, or failure to disclose these facts when deciding to sign the lease or move into their home?**

☑ Yes ☐ No

**38. After Plaintiffs moved in, did Defendants fail to disclose the true nature, severity, or cause of mold, moisture, water intrusion, lead, asbestos, pests, or other unsafe conditions in their home?**

☑ Yes ☐ No ☐ Unknown ☐ N/A

**39. After Plaintiffs reported problems, did Defendants say, suggest, or minimize that the condition was safe, minor, normal, repaired, remediated, or not a health concern?**

☑ Yes ☐ No

**40. If yes, please select any statements made verbatim or in substance:**

☑ It is just dust

☑ It is normal for Florida

☑ It is not mold

☐ It is mildew

☐ It is not dangerous

☐ It has been fixed

☑ The work order is complete

☐ The home is safe

☑ There is nothing to worry about

☐ Other: ________________________________

**41. If Defendants had disclosed the omitted facts before lease signing or move-in, what would Plaintiffs have done differently?**

☑ Refused the home

☑ Requested a different home

☐ Delayed move-in

☐ Requested inspection or testing

☐ Requested remediation before move-in

☑ Lived off-base

☐ Requested different lease terms

☐ Other: ________________________________

**42. Did Plaintiffs' lease include language such as:**

☑ "in good order and repair"

☑ "in a safe, clean habitable condition"

☐ "free of mold, mildew and signs of any water intrusion"

☐ Unsure at this time / Do not have copy of my lease

**43. Narrative**

Wayne Bush and his wife Lisa Bush moved into their Balfour home at 2056 Halsey Drive, after signing the lease with Balfour. After moving in, the family began experiencing serious health and safety concerns due to contact with mold, water damage and leaks leading to persistent moisture issues. In the lease, Defendants falsely warranted that the NAS Key West housing was safe, habitable, and free from defects. The Bush family justifiably relied on Defendants' assurances and representations.

Though Defendants were fully cognizant of the widespread problems plaguing NAS Key West housing—including chronic rodent and insect invasions, compromised structural integrity, pervasive mold growth, and defective plumbing systems—they deliberately withheld this critical information when leasing the home to the Bush family, concealing serious safety hazards and defects. The family acted in reasonable reliance on Balfour's

deceptive assurances that their dwelling was safe, properly maintained, and in livable condition. Having had the true facts regarding the safety and habitability of their dwelling concealed from them by Balfour, the family signed a lease, moved into their home, and suffered significant harm.

When the Bush family signed the lease, Balfour led the family to believe, including through its representations in the lease and its concealment of material facts, that their home was in habitable condition. Balfour knew or should have known that this representation was false and misleading. The Bush family relied on Balfour's representation when signing the lease. Had they known that the Balfour home was not habitable, they would not have signed the lease.

When moving in, the family identified mold and water damage and reported the issues to Balfour. Balfour failed to take meaningful action to remediate the hazards. Their home was also infested with rats, termites, and roaches, adding to the hazardous conditions.

In 2022, the family identified black mold in the bathroom. Defendants' technicians responded that it was "not mold." A statement which this technician knew or should have known was false to discourage the Bush family from pursuing remediation, relocation, or legal recourse. The name of this technican is known to Defendants and within their possession, custody, or control. At one point, a Balfour technician assured Mr. Bush that they were going to fix the mold problem. Mr. Bush was told that Balfour has these problems all the time in this specific location, and they know how to treat it. Notwithstanding this assurance, the mold was never remediated.

Balfour's deception extended to falsifying work records. On several occasions the family was told to stay home and wait for someone to come and repair their home. Someone stayed home and waited, but no one ever arrived. They would later be surprised to find out that Balfour had indicated that the job had been done and the work order was marked as complete. On other occasions, the family was told that no work order had been submitted despite the fact that Mr. Bush had submitted one.

The exposure to these conditions severely impacted the family's health. Wayne experienced unexplained sickness, low blood platelets, anxiety, and recurring nightmares, while Lisa suffered from severe allergies, migraines, kidney stones, and ultimately was diagnosed with breast cancer while living in the home. Mr. Bush suffered panic attacks as a result of the problems experienced due to the home's condition. The family's formerly healthy chihuahua and cat suffered rapid and unexplained health declines. Both pets died of heart failure despite the fact that the family spent thousands of dollars on veterinary treatments intended to save their lives.

Balfour perpetuated its deception by falsely claiming to perform adequate maintenance while conducting superficial repairs that merely disguised deeper issues rather than addressing their root causes. Balfour separately harmed the family by misleading them into thinking that it was attempting to mitigate the harms caused by its initial deception and failures to meet its contractual obligations. Throughout this ordeal, Balfour consistently refused to accept responsibility, provide financial compensation, or offer meaningful assistance to the Bush family, who were left with no choice but to continue living in dangerous conditions with no apparent path to resolution.

When the Bush family signed the lease, Balfour led the family to believe, including through its representations in the lease and its concealment of material facts, that their home was in habitable condition. Balfour knew or should have known that this representation was false and misleading. The Bush family relied on Balfour's representation when signing the lease. Had they known that the Balfour home was not habitable, they would not have signed the lease.

Balfour also represented that its representatives would adequately repair and remediate the unsafe, unhealthy, and hazardous conditions, including the leaks, mold, and structural damage to the Bush family's home. Balfour knew or should have known that these representations were false and misleading. The Bush family relied on these representations and stayed in their home waiting for Balfour to make the repairs and remediate the mold issues. Had they known that Balfour would not properly repair and remediate the home, they would not have done so.

Defendants concealed the conditions of their housing and failed to properly remediate the problems despite repeated requests.

The Bushes suffered serious health problems and economic damages (including loss of personal property, repair costs, and current and future medical expenses), emotional distress, and mental anguish as a direct result of the unsafe and unhealthy conditions at their Balfour home. These harms were made worse by Defendants' failure to redress those conditions, and Defendants' other acts and omissions.

## VII. INJURY AND HEALTH SYMPTOMS

**Wayne Bush**

| **Respiratory (Breathing) Issues** | |
|---|---|
| ☑ Yes | ☐ No |
| **Constitutional / Systemic** | |
| ☑ Yes | ☐ No |
| **Neurological / Cognitive** | |
| ☑ Yes | ☐ No |
| **Psychological / Psychiatric** | |
| ☑ Yes | ☐ No |
| **Sleep** | |
| ☑ Yes | ☐ No |
| **ENT (Ear, Nose, Throat)** | |
| ☑ Yes | ☐ No |
| **Cardiovascular / Autonomic** | |
| ☑ Yes | ☐ No |
| **Gastrointestinal** | |
| ☑ Yes | ☐ No |
| **Musculoskeletal** | |
| ☑ Yes | ☐ No |
| **Dermatologic (Skin)** | |
| ☐ Yes | ☑ No |
| **Immunological** | |

| | |
|---|---|
| ☐ Yes | ☑ No |
| **Ophthalmologic (Eye)** | |
| ☐ Yes | ☑ No |
| **Genitourinary / Reproductive** | |
| ☑ Yes | ☐ No |
| **Hormonal (Endocrine)** | |
| ☐ Yes | ☑ No |
| **Pediatric Neurodevelopmental (Children Only)** | |
| | |

**Lisa Bush**

| | |
|---|---|
| **Respiratory (Breathing) Issues** | |
| ☑ Yes | ☐ No |
| **Constitutional / Systemic** | |
| ☑ Yes | ☐ No |
| **Neurological / Cognitive** | |
| ☑ Yes | ☐ No |
| **Psychological / Psychiatric** | |
| ☑ Yes | ☐ No |
| **Sleep** | |
| ☑ Yes | ☐ No |
| **ENT (Ear, Nose, Throat)** | |
| ☑ Yes | ☐ No |
| **Cardiovascular / Autonomic** | |
| ☑ Yes | ☐ No |
| **Gastrointestinal** | |

| | |
|---|---|
| ☐ Yes | ☑ No |
| **Musculoskeletal** | |
| ☑ Yes | ☐ No |
| **Dermatologic (Skin)** | |
| ☐ Yes | ☑ No |
| **Immunological** | |
| ☐ Yes | ☑ No |
| **Ophthalmologic (Eye)** | |
| ☐ Yes | ☑ No |
| **Genitourinary / Reproductive** | |
| ☐ Yes | ☑ No |
| **Hormonal (Endocrine)** | |
| ☐ Yes | ☑ No |
| **Pediatric Neurodevelopmental (Children Only)** | |
| | |

## VIII. DAMAGES

**44.** As a direct and proximate result of Defendants' acts and omissions, Plaintiffs seek to recover the following categories of damages:

| **Economic Damages:** | |
|---|---|
| ☐ Past medical expenses (e.g., doctors, hospitals, testing, prescriptions)<br>☑ Future medical expenses (e.g., anticipated ongoing care)<br>☐ Past lost wages / income | ☑ Costs of alternative housing after vacating NASKW home<br>☑ Damage, destruction, or loss of personal property (e.g., furniture, clothing, electronics)<br>☑ Moving and relocation expenses |

| | |
|---|---|
| ☐ Future lost wages / diminished earning capacity<br>☐ Out-of-pocket costs during displacement (e.g., hotels, temporary housing) | ☑ Paid rent for an uninhabitable, deficient, and/or unhealthy home (e.g., BAH paid to Defendants)<br>☐ Other economic damages: ______________________ |
| **Non-Economic Damages:** | |
| ☑ Past physical pain and suffering<br>☑ Future physical pain and suffering<br>☑ Past mental anguish and emotional distress<br>☑ Future mental anguish and emotional distress<br>☑ Past physical impairment<br>☑ Future physical impairment | ☑ Diminished quality of life<br>☑ Anxiety, depression, or psychological harm<br>☑ Emotional distress related to displacement<br>☑ Emotional distress or anxiety related to fear of exposure<br>☐ Other non-economic damages: ______________________ |
| **Other Damages:** | |
| ☑ Punitive damages | ☑ Attorneys' fees |

## IX. LOST WAGES

**46. For any Plaintiff family members that are NOT in the military, do they believe they lost employment or wages as a result of their exposure?**

☐ Yes ☑ No

**47. Military Personnel Only: Are any members of Plaintiffs' family in the military that were medically discharged or are undergoing a medical discharge?**

☐ Yes ☑ No

**48. If yes, was the reason for the discharge related to mold?** ☐ **Yes** ☐ **No** ☑ **N/A**

## IX. CLAIM FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment against Defendants and award compensatory damages, punitive damages, attorneys' fees, and all other appropriate relief for the

harm to Plaintiff caused by Defendants' acts, omissions, and fraudulent conduct arising from the condition of military housing at Naval Air Station Key West.

## X. JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## XI. VERIFICATION

Each Plaintiff signing below declares under penalty of perjury that he or she has read the foregoing Complaint. Each Plaintiff declares that the factual allegations concerning that Plaintiff, that Plaintiff's minor child or children, and that Plaintiff's own acts, communications, injuries, damages, and experiences are true and correct based on personal knowledge. Allegations concerning other Plaintiffs, Defendants, or matters outside the signing Plaintiff's personal knowledge are believed to be true based on information and belief.

Signature of Plaintiff 1: Wayne Christopher Bush

Printed Name: **Wayne C Bush**

This 13 day of june, 2026

Signature of Plaintiff 2: Lisa M Bush

Printed Name: **Lisa M Bush**

This 13 day of June, 2026

DATED: June 14, 2026.

Respectfully submitted,

*/s/ Robert J. McKee*
**Robert J. McKee**
Florida Bar No.: 972614
**THE MCKEE LAW GROUP, LLC**
2800 South Flamingo Road
Davie, Florida 33330
Tel: (954) 888-9877
Fax: (954) 217-0150
Email: rmckee@themckeelawgroup.com

Kristina Baehr *(Pro Hac Vice)*
Christopher LaCour *(Pro Hac Vice)*
**JUST WELL LAW, PLLC**
2606 W. 8th Street, Units 1-2
Austin, Texas 78703
Tel: (512) 693-8029
Email: kristina@well.law
Email: chris@well.law
Email: militaryhousing-lit_PLslistserv@well.law

Vincent J. Colatriano *(Pro Hac Vice)*
Michael Weitzner *(Pro Hac Vice)*
**COOPER & KIRK, PLLC**
1523 New Hampshire Ave., N.W.
Washington, DC 20036
Tel: (202) 220-9600
Email: vcolatriano@cooperkirk.com
Email: mweitzner@cooperkirk.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed and served on all counsel of record via email on June 14, 2026.

*/s/ Robert McKee*

Robert McKee

Florida Bar No. 972614